In the

# United States Court of Appeals

## For the Seventh Circuit

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

―――――――――――

No. 15-3258

DEMIKO MCCASTER and
JENNIFER CLARK,

*Plaintiffs-Appellants*,

*v.*

DARDEN RESTAURANTS, INC.,
and GMRI, INC.,

*Defendants-Appellees.*

―――――――――――

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 8847 — **Samuel Der-Yeghiayan**, *Judge.*

―――――――――――

ARGUED FEBRUARY 18, 2016 — DECIDED JANUARY 5, 2017

―――――――――――

Before WOOD, *Chief Judge*, KANNE and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. From roughly 2004 to 2012, Demiko McCaster and Jennifer Clark worked on and off at two Illinois eateries owned by Darden Restaurants. After quitting for good, they brought this proposed class action alleging that Darden failed to pay them pro rata vacation pay upon

separation in violation of the Illinois Wage Payment and Collection Act ("IWPCA" or "the Act"), 820 ILL. COMP. STAT. 115/1-15. The district judge declined to certify their proposed class and granted summary judgment for Darden on Clark's individual claim. McMaster then settled his claim with Darden but reserved the right to appeal the denial of class certification.

We affirm. The judge was right to deny class certification. The plaintiffs' proposed class definition described an impermissible "fail safe" class, and their proposed alternative did not satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. And Clark's individual claim fails. The IWPCA doesn't mandate paid time off. It merely prohibits the forfeiture of accrued earned vacation pay upon separation *if* the employee is otherwise eligible for paid vacation under the employer's employment policy. During the relevant time period, Darden's policy on paid vacation covered only full-time employees. Clark was ineligible because she worked part-time.

## I. Background

Darden operates more than 75 casual dining restaurants throughout Illinois under the brand names Olive Garden, Red Lobster, LongHorn Steakhouse, and several others.[1] The plaintiffs worked intermittently as hourly employees at Darden-owned restaurants for a period of time spanning roughly eight years. McCaster worked periodically at a Red Lobster in 2004 and 2005 and more steadily from mid-2007

---

[1] Darden owned the restaurants through its wholly owned subsidiary GMRI, Inc., also a defendant. We will refer to the defendants collectively as "Darden."

to early 2009. Clark worked at an Olive Garden from mid-2004 to October 2008 and again from 2009 to mid-2012.

During this time, Darden paid eligible employees an "anniversary payment" when they reached the annual anniversary of their hiring date. This anniversary payment essentially functioned as paid vacation—or at least that's how Darden treated it for purposes of the obligations imposed by the IWPCA. When an employee ceased working for the company, Darden would include in the employee's final paycheck the pro rata amount of anniversary pay he had earned prior to the date of separation. This pro rata date-of-separation payment comports with how the IWPCA requires employers to treat earned vacation pay. So from now on we'll drop the company's "anniversary pay" terminology and just call this vacation pay.

Two basic versions of the vacation-pay policy are at issue here. Under the first version—in effect prior to June 1, 2008—all employees were eligible. Under the second version, vacation pay was limited to full-time employees, defined as those who worked at least 30 hours per week. This second version of the policy took effect on June 1, 2008. Individual restaurant managers were responsible for determining employee start dates, hours worked, leaves of absence, termination dates, rehire dates, and other basic payroll information that contributed to an employee's eligibility for earned vacation pay.

In this proposed class action, McCaster alleged that while the first policy was in effect, Darden failed to pay him accrued vacation pay when he left his job at Red Lobster, even though he had earned about 12 vacation hours. Clark, for her part, received all the vacation pay she was owed

while the first policy was in effect; she alleged that after June 1, 2008, Darden did not pay her any vacation pay at all when she separated from employment.

In discovery Darden produced five spreadsheets containing statewide payroll information during the relevant time period. As the plaintiffs interpret this data, more than 1,200 employees left Darden's employ without receiving the pro rata vacation pay they were owed. This interpretation, however, rests entirely on a "declaration" from a paralegal who works at the law firm of one of the plaintiffs' attorneys. The judge struck the declaration because the paralegal had no personal knowledge of the data, lacked the expertise to interpret it, and the plaintiffs had not designated her as an expert witness. The plaintiffs challenge that ruling on appeal, but they provide no good reason to disturb it. Regardless, the paralegal's declaration is immaterial to our decision.

The plaintiffs moved for class certification and proposed the following class definition: "All persons separated from hourly employment with [Darden] in Illinois between December 11, 2003, and the conclusion of this action[] who were subject to Darden's Vacation Policy … and who did not receive all earned vacation pay benefits." The district judge rejected this definition because it described an improper fail-safe class. The judge also rejected the plaintiffs' proposed alternative definition because it failed to meet the requirements of Rule 23.

In the meantime Darden moved for partial summary judgment on Clark's individual IWPCA claim. The company argued that no violation of the Act had occurred because during the relevant time period, only full-time employees were eligible for vacation pay and Clark worked part-time.

The judge agreed and granted the motion. McCaster settled his individual claim with Darden but reserved the right to appeal the denial of class certification. This appeal followed.

## II. Discussion

The plaintiffs seek reversal of the judge's decision denying class certification. Clark also asks us to reverse the judge's decision rejecting her IWPCA claim on the merits. The latter issue is quite straightforward, so we'll take it up first.

### A. Clark's IWPCA Claim

Clark admits that she received all the vacation pay she was owed under Darden's old policy. After June 1, 2008, she was ineligible to receive paid vacation. The company's new vacation-pay policy, which took effect on that date, covers only full-time employees, defined as those who work at least 30 hours per week. Clark did not qualify because she worked part-time.

Clark concedes the point but argues that if an employer provides paid vacation to its full-time employees on a pro rata length-of-service basis, it may not deny this same benefit to its part-time employees. The district judge rejected this novel interpretation of the IWPCA, and rightly so. It has no support in the text of the Act, its implementing regulations, or in Illinois cases interpreting it.

The relevant provision of the IWPCA states:

> [W]henever … [an] employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all *vacation time earned in accordance with such*

> *contract of employment or employment policy*, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay and *no … employment policy shall provide for forfeiture of earned vacation time upon separation*.

820 Ill. Comp. Stat. 115/5 (emphases added). This text plainly doesn't *mandate* paid time off; by its terms, the Act merely prohibits the forfeiture of accrued earned vacation pay. Whether an employee has earned paid vacation in the first place depends on the terms of the employer's employment policy.

The Illinois Department of Labor has promulgated regulations carrying this anti-forfeiture rule into effect. In relevant part the regulations state that "[w]henever an … employment policy provides for paid vacation earned by length of service, vacation time is earned pro rata as the employee renders service to the employer." Ill. Admin. Code tit. 56, § 300.520(a) (2016).[2]

Taken together, the statute and regulation require that if an employer awards paid vacation on a length-of-service

---

[2] This regulation has been repeatedly affirmed as a reasonable interpretation of the IWPCA. *See People ex rel. Ill. Dep't of Labor v. Gen. Elec. Co.*, 806 N.E.2d 1143, 1149 (Ill. App. Ct. 2004); *Mueller Co. v. Dep't of Labor*, 543 N.E.2d 518, 520 (Ill. App. Ct. 1989) (explicitly reaffirming *Golden Bear* after amendments were made to the IWPCA); *Golden Bear Family Rests., Inc. v. Murray*, 494 N.E.2d 581, 588 (Ill. App. Ct. 1986).

No. 15-3258                                                                    7

basis, employees are entitled to payment for accrued, un-used earned vacation on a pro rata basis upon separation.[3]

Clark hangs her hat on *Golden Bear Family Restaurants, Inc. v. Murray*, 494 N.E.2d 581 (Ill. App. Ct. 1986), but that case is easily distinguished from this one. The employment policy at issue in *Golden Bear* provided that paid vacation time accrued daily but separating employees did not receive payment for accrued earned vacation unless they were "actively on the payroll … on the Wednesday preceding January 1."[4] *Id.* at 583. The court held that this condition—active employment on a specific calendar date—worked a forfeiture of accrued earned vacation pay in violation of the IWPCA and the pro rata regulation. *Id.* at 589.

Another Illinois appellate decision makes it clear that *Golden Bear* stands for the proposition that a length-of-service paid-vacation policy violates the IWPCA's anti-forfeiture rule when it conditions payment of accrued earned vacation to employment status on a specific date. *See*

---

[3] Illinois courts contrast length-of-service vacation policies with "forward looking" vacation policies, which provide vacation to employees for a given year at the beginning of that year. Under the latter policy, the amount of vacation time employees receive in a given year is not contingent on how much they work that year. *See, e.g., General Electric*, 806 N.E.2d at 1152 ("[B]ecause an employee was given all of his or her vacation days for the year on the first of the year, the policy was forward-looking … ."). As we've noted, Darden concedes that its policy is a length-of-service policy.

[4] The opinion actually quotes the policy as limiting vacation pay to employees who were "actively on the payroll … on the Wednesday *proceeding* January 1." *Golden Bear Family Rests.*, 494 N.E.2d at 583 (emphasis added). The word "proceeding" is obviously a typographical error.

*Mueller Co. v. Dep't of Labor*, 543 N.E.2d 518, 521 (Ill. App. Ct. 1989) (explaining that accepting the employer's position "would require us to find an employee 'earns' his vacation benefits for a whole year on the basis of his employment status on a single day, … [which] would defy the common understanding of the word 'earn' and we decline to adopt it").

The policy at issue here differs fundamentally from the policy challenged in *Golden Bear*. Under the June 1, 2008 policy, full-time Darden employees who separate from the company receive payment for earned vacation pro rata based on length of service, as the IWPCA and its implementing regulation require. So if a full-time employee ceases work in the middle of a year, he receives vacation pay in proportion to how long he has worked that year. In marked contrast to the *Golden Bear* policy, this one doesn't condition receipt of earned vacation pay to employment status on an arbitrary date. It simply limits the paid-vacation benefit to full-time employees. Nothing in the IWPCA or the implementing regulation prohibits this.

Under the policy that was in effect on and after June 1, 2008, Clark was ineligible for paid vacation because she did not work full-time. Because she did not earn any paid vacation in the first place, no violation of IWPCA's anti-forfeiture rule occurred.

## B. Class Certification

We review the judge's decision denying class certification for abuse of discretion. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014). An abuse of discretion can occur "when a district court commits legal error or makes clearly

No. 15-3258                                          9

erroneous factual findings." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ.*, 797 F.3d 426, 433 (7th Cir. 2015) (quoting *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 (7th Cir. 2013)). The plaintiffs had the burden to satisfy the district court that their case met the requirements for class certification under Rule 23. *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015).

The initial skirmish on appeal centers on whether the proposed class definition describes an impermissible "fail safe" class. A case can't proceed as a class action if the plaintiff seeks to represent a so-called fail-safe class—that is, a class that "is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). A fail-safe class is impermissible because "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.*

McCaster and Clark sought to represent a class of "[a]ll persons separated from hourly employment with [Darden] in Illinois between December 11, 2003, and the conclusion of this action[] who were subject to Darden's Vacation Policy … *and who did not receive all earned vacation pay benefits*." (Emphasis added.) Under this definition class membership plainly turns on whether the former employee has a valid claim. That is a classic fail-safe class, and the district judge properly rejected it.[5]

---

[5] Our decision in *Ross v. RBS Citizens, N.A.*, 667 F.3d 900 (7th Cir. 2012), *cert. granted, judgment vacated*, 135 S. Ct. 1722 (2013), is not to the contrary. In *Ross* we accepted a class defined as employees "who were subject to

As we've explained elsewhere, however, the problem of a fail-safe class "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Id.* In their fallback argument in the district court, the plaintiffs suggested that the defect in their class definition could be cured by simply excising the phrase "and who did not receive all earned vacation pay benefits." With this language removed, the proposed class would be defined as "[a]ll persons separated from hourly employment with [Darden] in Illinois between December 11, 2003, and the conclusion of this action[] who were subject to Darden's Vacation Policy."

This alternative is indeed free from fail-safe concerns. Still, the judge rejected it, this time for failure to satisfy the requirements of Rule 23. That was not an abuse of discretion.

"A district court may certify a case for class-action treatment only if it satisfies the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the conditions of Rule 23(b)." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012) (citing FED. R. CIV. P. 23). The plaintiffs sought certification under Rule 23(b)(3), which requires

---

defendants' *unlawful* compensation policies." *Id.* at 906. But the indefiniteness in that class definition was substantially ameliorated by the content of the judge's certification order. *Id.* More fundamentally, the Supreme Court vacated our decision in *Ross*, and on remand the case was settled before it could be revisited. A vacated panel opinion has no precedential force. *County of Los Angeles v. Davis*, 440 U.S. 625, 634 n.6 (1979); *United States v. Love*, 706 F.3d 832, 840 (7th Cir. 2013). We suggested otherwise in a stray footnote in *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 375 n.3 (7th Cir. 2015), but we now clarify that *Ross* has no precedential value.

that "questions of law or fact common to class members predominate over any questions affecting individual members." Predominance is "similar to Rule 23(a)'s requirements for typicality and commonality, [but] 'the predominance criterion is far more demanding.'" *Messner*, 669 F.3d at 814 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The judge focused most of his attention on the commonality question under Rule 23(a). This inquiry overlaps with Rule 23's other requirements and is ultimately dispositive here.

The Supreme Court has explained that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury'" at the hands of the same defendant. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). But it's not enough for the plaintiffs to show that class members "have all suffered a violation of the same provision of law." *Id.* at 350. Instead they must show that "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members." *Suchanek*, 764 F.3d at 756. "The critical point is 'the need for *conduct* common to members of the class.'" *Id.* (quoting *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014)). Put somewhat differently, the class members' claims must depend on a common contention that is "capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350.

The plaintiffs haven't satisfied this bedrock requirement for class certification. Their proposed alternative class consists of *all* separated employees from December 11, 2003, to the present. But they haven't identified any unlawful conduct on Darden's part that spans the entire class and caused

all class members to suffer the same injury. Even on appeal they haven't pointed to any unlawful practice or act common to the class (as they have alternatively defined it). They do not contend, for example, that Darden's pre- or post-June 1, 2008 vacation-pay policies facially violate the IWPCA. Nor have they alleged that Darden had a statewide practice of withholding payment of accrued earned vacation—much less supplied evidence that could support such a finding. Rather, they simply argue that some separated employees like McCaster did not receive all the vacation pay they were due under the applicable policy. That may be true, and if so, those individual cases of nonpayment would be IWPCA violations. But establishing those violations (if there were any) would not involve any classwide proof.

The plaintiffs do suggest one possible common question: whether Darden's vacation-pay policies—both before and after June 1, 2008—are length-of-service policies subject to the pro rata requirement of the IWPCA and its implementing regulation. That is indeed a common question, but it's not at issue here.

The Supreme Court noted in *Wal-Mart* that "[a]ny competently crafted class complaint literally raises common 'questions.'" *Id.* at 349 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 131–32 (2009)). The Court took pains to clarify that not any common question will suffice to support class certification. Instead, a putative class-action plaintiff must identify a common question, the answer to which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

No. 15-3258                                                                13

McCaster and Clark haven't done that. As we've already explained, the common question they proposed for resolution is really no question at all. There's no need to decide whether Darden's "anniversary pay" policies are length-of-service policies to which the IWPCA's pro rata requirement applies. They are. Darden treats them as such. The case thus raises only an amalgam of individual IWPCA pay claims by McCaster, Clark, and other separated employees dating from late 2003 to the present. These claims may (or may not) be valid based on the employee's particular circumstances; resolving them depends entirely on each employee's individual work history at a Darden restaurant and the specific payroll practices of the managers of the restaurants where they worked. In other words, resolving the proposed class members' claims doesn't center on any question common to the class, but instead turns entirely on facts specific to each individual class member's claim.

The plaintiffs' failure to satisfy the commonality requirement is fatal to their request for class certification. That necessarily means that they have not satisfied Rule 23(a)'s typicality requirement, much less the more strenuous predominance requirement of Rule 23(b)(3). Class certification was properly denied.

AFFIRMED.